[No. D018866. Fourth Dist., Div. One. Oct. 27, 1993.]

FRANK ZOLIN, as Director, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
PUBLIC SAFETY EDUCATORS, INC., Real Party in Interest.

COUNSEL

Daniel E. Lungren, Attorney General, Martin H. Milas and Mary Horst, Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

Matthew R. Rutherford for Real Party in Interest.

OPINION

**WORK, Acting P. J.**—The sole issue presented by this petition for extraordinary relief is whether the Vehicle Code[1] section 11205 requirement that the California Department of Motor Vehicles (Department) publish a list of all licensed traffic violator schools, permits a private cause of action against the state by a school negligently omitted from the published list? As we shall explain, we conclude that although section 11205 mandates the state to publish a complete and accurate list of all licensed traffic violator schools, it does not create a private cause of action against the state for negligently failing to include a traffic violator school on the referral list. Accordingly, we grant the petition.

### Factual[2] and Procedural Background

On January 25, 1993, Public Safety Educators, Inc. (PSE) filed its first amended complaint against the Department for damages arising from the Department's failure to include PSE's two traffic violator schools on the list of all approved licensed traffic violator schools distributed by the municipal courts to traffic violators wishing to exercise their option of attending traffic violator school in lieu of pleading guilty to traffic infractions. On April 25, 1991, PSE had obtained in superior court case No. 631807 a judgment prohibiting the Department from issuing a list of approved traffic violator schools, as mandated by section 11205, without listing PSE's two licensed traffic violator schools. However, the May 1991 list was published and distributed without listing PSE's two licensed traffic violator schools.

PSE's first amended complaint specifically alleges:

"By licensing Plaintiff, by accepting licensure fees, renewal fees, certificate fees and other charges from the Plaintiff in exchange for licensing

---

[1]All statutory references are to the Vehicle Code unless otherwise specified.

[2]For purposes of this petition, all properly pled factual allegations within the first amended complaint are deemed true, admitted by Department's demurrer. (*White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222]; *Keech* v. *Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464, 467 [210 Cal.Rptr. 7].)

Plaintiff as a traffic violators school, and by undertaking to publish THE LIST prior to May, 1991, Defendants; and, each of them, undertook the duty of due care to insure that Defendants complied with the provisions of Vehicle Code sections 11205 and 11208, which provide that the Defendants, when publishing THE LIST, shall include upon such LIST the names and locations of all licensed traffic schools. One of the purposes behind the enactment of Vehicle Code section 11205 as it existed on May 31, 1991 was to provide that Defendants, as part of the consideration returned for of [*sic*] the licensure and certificate fees paid by the traffic violator schools, would create such a listing for the benefit of the traffic violator schools, including Plaintiff, in lieu of private advertising.

"On or about May 31, 1991, Defendants breached its duty, and the Court order issued in April, 1991, by causing THE LIST to be prepared, published and sent to Municipal Courts all over the State without including the name and/or locations of two of Plaintiff's traffic violator schools, thereby causing Plaintiff damages due to lost revenues for a period of approximately six months, all to the Plaintiff's damages in a sum to be proven at trial, but in excess of $25,000.00."

PSE contends the Department's failure to perform its statutory obligation to include PSE's approved driving schools on the comprehensive listing results in liability. PSE reasons it is clearly foreseeable the Department's failure to do so would substantially injure PSE because the published lists are utilized by the courts throughout the state when ordering individuals to a traffic violator school program or by individuals who voluntarily attend such a driving school in lieu of attending a trial on traffic citations.

On February 24, 1993, the Department demurred to PSE's first amended complaint, asserting the complaint failed to state facts sufficient to state a cause of action because PSE had not complied with the governing statute of limitations; there is no statutory or constitutional basis; the Department is cloaked by governmental immunity; the Department has no duty to PSE which it has breached; and the listing of approved driving schools is protected under Civil Code section 47. On April 2, by telephonic order, the trial court overruled the Department's demurrer, specifically stating by minute order:

"Vehicle Code [section] 11205 states that a list of '. . . all traffic violator schools which are licensed . . .' shall be published semiannually. The statute creates a duty on defendants to publish a list of all schools. Plaintiff has plead sufficient facts to state a cause of action for negligence.

"The demurrer for failure to state a cause of action on the basis that the cause of action is barred by governmental immunity and the litigation

privilege of [Civil Code section] 47 is overruled. Plaintiff does not allege a 'misrepresentation.' Plaintiff alleges that defendants did not act with 'due care' in compiling the list. [Government Code section] 818.8 is not applicable. Moreover, the published lists do not fall under the ambit of [Civil Code section] 47." On April 16, the court confirmed its telephonic order.

The Department seeks a peremptory writ of mandate directing the superior court to set aside its April 16 ruling overruling its demurrer and to enter an order sustaining its demurrer without leave to amend. We issued an order to show cause and stayed all further proceedings until notice by this court.

*Governing Law*

"A public entity is not liable for an injury except as otherwise provided by statute. (Gov. Code, § 815, subd. (a); *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 809. . . .)" (*Tirpak v. Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639, 642 [232 Cal.Rptr. 61].)

Whether PSE can state a cause of action arising from the Department's breach of a mandatory duty is governed by Government Code section 815.6, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Case precedent has construed this provision as requiring " 'a three-pronged test for determining whether liability may be imposed on a public entity: (1) an enactment must impose a mandatory, not discretionary, duty [citation]; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting [Government Code] section 815.6 as a basis for liability [citations]; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered.' " (*MacDonald v. State of California* (1991) 230 Cal.App.3d 319, 327 [281 Cal.Rptr. 317], quoting *State of California v. Superior Court* (1984) 150 Cal.App.3d 848, 854 [197 Cal.Rptr. 914].) The controlling issue is whether the challenged statute was designed to impose an obligatory duty to take specific official action to prevent particular foreseeable injuries, thus providing an appropriate basis for civil liability. (*Keech v. Berkeley Unified School Dist.*, *supra*, 162 Cal.App.3d at p. 470.) If injury of the kind sustained was not one of the consequences which the Legislature sought to prevent through imposing the alleged mandatory duty, liability does not obtain under Government Code section 815.6. (*Ibid.*; *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1239 [271 Cal.Rptr. 72]; *Tirpak v. Los Angeles Unified School Dist.*, *supra*, 187 Cal.App.3d at p. 644.)

The determination of whether a particular statute was legislatively intended to impose a mandatory duty constitutes a question of interpretation and thus law for the courts to resolve. (*Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624 [200 Cal.Rptr. 440, 677 P.2d 846].)[3] ■ The phrase "mandatory duty" in Government Code section 815.6 is distinguishable from the legal doctrine concerning "directory" and "mandatory" provisions. (*State of California* v. *Superior Court* (*Ushana*) (1992) 8 Cal.App.4th 954, 958 [10 Cal.Rptr.2d 527].)

" 'As used in [Government Code] section 815.6, the term "mandatory" refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses. By contrast, the "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " (8 Cal.App.4th, *supra*, at p. 958, quoting *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908-910 [136 Cal.Rptr. 251, 559 P.2d 606].)[4]

■ *Whether Section 11205 by Imposing a Mandatory Ministerial Duty Upon the Department to Publish a Comprehensive and Accurate List of All Licensed Traffic Violator Schools Was Legislatively Intended to Provide a Basis for Civil Liability for the Negligent Omission of Schools From the Published List*

Former section 11205, as amended in September 1990, pertinently provided:

"(a) The Department shall publish annually, or more often as necessary to serve the purposes of this chapter, a list of all schools which are licensed pursuant to this chapter. . . . The department shall transmit a copy of the list to each justice court and each municipal court in the state. The department shall periodically revise the list so that each court may have a current list of all licensed traffic violator schools.

---

[3]"The legislative intent can usually be determined from the statutory language. [Citation.] However, when the specific language does not shed light as to the intent of the legislature, it can be determined from other factors which indicate the intent of the legislature. [Citation.] It is well established that statutes must be given a reasonable construction that conforms to the apparent purpose and intention of the law makers [citations], and the various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute. [Citations.]" (*Nunn* v. *State of California, supra*, 35 Cal.3d at pp. 624-625; *MacDonald* v. *State of California, supra*, 230 Cal.App.3d at p. 327.)

[4]For a comprehensive review of the extensive case law developed over the years on the existence of mandatory duties of governmental entities, see *MacDonald* v. *State of California, supra*, 230 Cal.App.3d at pages 327-329.

"(b) Except as otherwise provided in subdivision (d) of [Vehicle Code] Section 42005, the court shall only use the current list of traffic violator schools published by the department when it orders a person to attend a traffic violator school . . . ."

Ever since its first enactment in 1984 (Stats. 1984, ch. 1037, § 4), section 11205 has required the Department to publish a list of all licensed traffic violator schools and to periodically revise it in order to keep the list current for distribution to justice and municipal courts throughout the state.[5] Our review of the legislative history underlying the enactment of section 11205 convinces us the Legislature intended to establish a mandatory ministerial duty on the part of the Department to publish a complete, accurate and comprehensive list of all licensed traffic violator schools for use by the courts when ordering persons to attend traffic school and by those individuals who desire to avoid trial on a traffic violation by resort to voluntary attendance at a licensed traffic school. The Department has been obligated to provide this list even before the enactment of section 11205 in 1984, long before any concerns and controversy surfaced regarding the names being given to traffic violator schools to entice attendance. (See former § 1661, subd. (a), repealed by Stats. 1984, ch. 1037, § 3; Cal. Legis. Rep., 1984 Summary Dig., ch. 1037, § 1 (Assem. Bill No. 3263); Rep. of Assem. Com. on Crim. Law & Pub. Safety (1984 Gen. Sess.) p. 104; Enrolled Bill Rep., Bus. & Transp. Agency, Assem. Bill No. 3263, Sept. 5, 1984; Enrolled Bill Rep., Finance, Assem. Bill No. 3263, Sept. 8, 1984.) The Department's reliance on legislative intent underlying the 1990 and 1991 amendments to section 11205 as narrowly defining the legislative purpose of section 11205 requiring the publication of the list so as to only regulate the names of traffic violator schools is misplaced. Preliminarily, the later enactment of amendments to legislation specifically designed to address a perceived problem in the legislative scheme does not render ineffective the original legislative intent underlying the enactment of the provision in the first place. Here, the 1990 and especially the 1991 amendments to section 11205 were legislatively designed to add a statutory scheme to regulate the names used by traffic violator schools. (See Assem. J., Dec. 4, 1990, containing a letter dated Dec. 3, 1990, from Assem. member Gil Ferguson to Willie L. Brown, Jr., Speaker of the Assem., regarding intent of Assem. Bill No. 1111 (Stats. 1990, ch. 1091; Stats. 1991, ch. 411, § 3, eff. Sept. 17, 1991).)[6] Although the most recent amendments to section 11205 were so designed, the legislative history is devoid of any indication the Legislature intended its statements to that effect, accompanying the recent amendments,

---

[5]Section 11205 was enacted as part of a statutory scheme designed to weed out sham or fraudulent traffic violator schools and to provide a comprehensive licensing scheme for traffic violator school operators and instructors. (Sen. Repub. Caucus, Assem. Bill No. 3263, p. 3, Aug. 20, 1984; Sen. Com. Rep. on Judiciary, Assem. Bill No. 3263, Analysis (1983-1984 Reg. Sess.) p. 2.)

[6]Specifically, the 1991 amendment declared:

to constitute all-encompassing statements of what was intended by prior legislative sessions in originally imposing the mandatory duty. Simply stated, there is no evidence of such transmutation.

In fact, a review of the legislative history of the statutory predecessor to section 11205, former section 1661, subdivision (a), establishes the requirement was intended to provide the courts and traffic violators with a more uniform, efficient procedure for referral of only accredited schools and programs, eliminating the courts' problems of determining the relative value of the programs offered at competing schools and facilities. (Assem. 3d Reading, Sen. Bill No. 193, Assem. Off. of Research, p. 1; Sen. Dem. Caucus, Sen. Bill No. 193, 3d Reading.) In 1975, the Legislature enacted former section 1661, subdivision (a) requiring the Department to publish annually a list of accredited traffic violator schools as part of a statutory scheme designed to establish accreditation standards for such licensed driving schools. (Legis. Counsel, Rep. on Enrolled Bill (Sen. Bill No. 193), Sept. 16, 1975, pp. 1-2.) The Legislature was well aware of the courts' need for a list of qualified schools to assure traffic violators are sent to competent schools near their residences when a violator's residence is outside the courts' jurisdiction and/or it has no immediate knowledge of the competency of the school. (Legis. Analysis, Dept. of Motor Vehicles, Sen. Bill No. 193, May 19, 1975, pp. 1-2; Apr. 24, 1975, pp. 1-2; Mar. 17, 1975, pp. 1-2.) Consequently, the requirement the Department annually publish a list of accredited traffic violator schools was designed not to protect the operators of such schools with a guarantee of equal competition through the referral list, but rather to provide the courts and traffic violators with an efficient procedure for referral of only accredited schools.

Moreover, even though section 11205 may impose a mandatory ministerial duty upon the Department, it does not necessarily follow that it sets forth an actionable mandatory duty, privately enforceable rendering the Department liable to traffic violator schools for negligent omission from the

---

"It is the intent of the Legislature in enacting this bill to regulate the naming of licensed traffic violator schools to prevent the use of names which are undesirable from a public safety perspective and are devised only to attract students.

"The Department of Motor Vehicles regulates all traffic violator schools, but has not established guidelines for the naming of those schools in the absence of guidelines for the naming of licensed traffic violator schools, many schools have adopted names that are undignified to the point of fostering a negative image, undermining the intent of the traffic safety training program, and constituting an embarrassment to the members of the public, judges, the courts, and the traffic school industry. This act is intended to eliminate the abusive practice of the use of inappropriate traffic school names.

"This act defines the responsibilities of the department with respect to what is required to be included on the court referral list and traffic school owners' list, and how frequently those lists are to be printed and distributed." (Stats. 1991, ch. 411, § 3, eff. Sept. 17, 1991.)

published lists. (See *State of California* v. *Superior Court* (*Ushana*), *supra*, 8 Cal.App.4th at p. 958.) The Department asserts section 11205 was not intended by the Legislature to constitute a springboard for damage actions against the State of California. Relying on *State of California* v. *Superior Court* (*Ushana*), *supra*, 8 Cal.App.4th at page 958, the Department contends the statute and its legislative history are silent regarding whether a private cause of action was intended for schools that might inadvertently be omitted from the list.

In response, PSE focuses on the entire statutory scheme governing traffic violator schools, arguing it is designed to tightly regulate the industry rendering licensed traffic violator schools its captives wholly dependent upon the Department's performance of its obligatory duties in order to obtain customers necessary for business survival. PSE accurately points out in order for any traffic violator school to have a realistic chance of obtaining customers through the court system, its name must be included on the referral list of currently licensed schools published by the Department. The statutes compel the traffic violator school industry to comply with a rigid regulatory scheme in order to be eligible to conduct traffic violator school classes, requiring them to rely upon the Department's publication of an accurate and comprehensive list of all schools in order to survive. PSE argues the Department receives from PSE and other operators of traffic violator schools substantial license fees, the payment of which entitles them to conduct business in this state as traffic violator schools. Consequently, PSE contends the statutory scheme clearly evinces a legislative intent to create and impose a mandatory ministerial duty upon the Department to create and dispense an accurate and comprehensive listing of all currently licensed traffic violator schools, giving rise to civil liability for negligent omissions. PSE admits a licensing statute which compels it to place its entire financial future at the whim of an administrative agency and its ability to competently perform mandatory ministerial functions is highly unusual without comparable statutory precedent. Nonetheless, it asserts the exclusivity of the list as a referral source for the traffic violator school industry and the Department's duty to accurately and comprehensively compile that list as part of the consideration for the issuance and maintenance of a traffic violator school license strongly indicates the Legislature intended to create a duty for which civil liability would attach. We are unpersuaded.

We conclude section 11205 was not intended by the Legislature to serve as a basis for civil liability. Our review of the legislative history preceding the enactment of section 11205 and underlying its amendments provide no evidence the Legislature intended to impose a duty upon the Department which would provide a basis for civil liability. (*State of California* v. *Superior Court* (*Ushana*), *supra*, 8 Cal.App.4th at p. 958.)

In fact, the available relevant 1984 legislative materials analyzing the general impact and fiscal effect of Assembly Bill No. 3263 do not contain even a passing reference to, or a permissible inference of, potential state liability for the Department's negligent omission of a traffic violator school from the referral list. Our search of all available legislative intent materials pertaining to the later amendments to section 11205, as well as the enactment of its predecessor, former section 1661, has also proved fruitless. Granted, the state has an interest in (1) guaranteeing the existence of an efficient procedure which informs the courts and traffic violators of the availability of currently licensed traffic violator schools within their respective judicial districts, (2) regulating the naming of licensed traffic violator schools to prevent the use of names which are inconsistent with the public safety perspective and simply designed to attract students, and (3) guaranteeing equal access to the primary referral list to all licensed traffic violator schools. However, it does not necessarily follow that the negligent performance of this listing duty must be transformed into a vehicle for a private damage suit. (See *State of California* v. *Superior Court (Ushana)*, *supra*, 8 Cal.App.4th at p. 958.) Given the complete absence of any indication the Legislature intended to make the state liable in damages for the Department's negligent performance of its mandatory ministerial duty of listing all licensed traffic violator schools, we conclude section 11205 does not create a private cause of action for failing to include a traffic violator school on the published list of traffic violator schools the Department is required to make and distribute under section 11205. (See *ibid.*; *MacDonald* v. *State of California*, *supra*, 230 Cal.App.3d at p. 332.)

In summary, although it is reasonable to conclude that one of the several underlying purposes of section 11205 is to provide equal access to all licensed traffic violator schools through the primary referral list, it does not follow the Legislature intended the state to be financially liable for the Department's negligence in performing that mandatory duty. The statutory scheme was clearly intended primarily to free the courts of the obligation of evaluating the respective value and standards of competing programs and to provide traffic violators with a source of licensed traffic violator schools. Absent any evidence to the contrary, we look with approval on case precedent which has declined to transform statutory procedural provisions into springboards for private damage suits. (See *Keech* v. *Berkeley Unified School Dist.*, *supra*, 162 Cal.App.3d at p. 471; *State of California* v. *Superior Court (Ushana)*, *supra*, 8 Cal.App.4th at p. 958.)[7]

---

[7] In light of our determination the Legislature did not intend section 11205 to create an *actionable* mandatory duty, we do not address the issue of proximate causation.

## Disposition

Let a peremptory writ issue directing the superior court to vacate its order and enter a new and different order sustaining the Department's demurrer without leave to amend. The stay issued June 4, 1993, is vacated.

Huffman, J., and Froehlich, J., concurred.