[No. B074475. Second Dist., Div. Two. May 10, 1995.]

ROBERT FLEMING, as Personal Representative, etc., et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Howrey & Simon, J. Michael Hennigan, John L. Amsden and Mary H. Chu for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Robert H. Francis and Edward H. Ochoa, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

NOTT, J.—Plaintiffs Robert Fleming, as personal representative of the estate of Vicki Lynne Hoskinson, and members of Hoskinson's family (Deborah Jane Carlson, George Glenn Carlson, Jr., Stephanie Dawn Hoskinson, Carie Lynn Carlson, and Brian William Carlson) appeal from the dismissal of their action against the State of California and its Parole Officer Robert McLean for failure to prevent the brutal and tragic murder of Vicki by Frank Atwood, a parolee. The trial court sustained both defendants' demurrers primarily on grounds of immunity. Plaintiffs contend: "[I.] The first amended complaint adequately alleges claims against the state for failing to perform the mandatory and statutory duty to arrest Frank Atwood. [II.] The trial court erred in dismissing plaintiffs' claims because the state's conduct also gives rise to liability under Arizona law. [III.] The second amended complaint adequately alleges a claim for violation of civil rights under 42 U.S.C. section 1983. [IV.] California governmental immunity statutes do not apply to federal civil rights claims in state court."

Plaintiffs first sued in an Arizona court, where their action was dismissed for lack of personal jurisdiction. Plaintiffs then filed the present action. Their first amended complaint alleged counts for violation of civil rights, failure to perform a mandatory duty, and negligence against these defendants. The state's demurrers to the first amended complaint were sustained without leave to amend.

McLean's demurrers were sustained with leave to amend. Plaintiffs filed a second amended complaint, alleging civil rights violations and wrongful death against McLean. The trial court sustained McLean's demurrer to the negligence claim only without leave to amend. McLean answered the civil rights count and moved for judgment on the pleadings. The trial court granted the motion. This appeal followed.

### FACTS

In our review, we assume the truth of all facts properly pleaded. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Ramirez* v. *USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397 [285 Cal.Rptr. 757].)

On May 16, 1984, Frank Atwood was paroled from a California state prison. He had a history of pedophilia, violence, and drug abuse. The conditions of Atwood's parole included that he remain within the borders of California and that he not associate with children.

In August 1984, in violation of his parole, Atwood visited Tucson, Arizona, and Enid, Oklahoma. The police in Enid notified defendants that Atwood was in Oklahoma in violation of his parole.

On September 6, 1984, in California, Atwood admitted to McLean that he had left the state without permission. Later that day, Atwood's father told McLean that Atwood had been alone with a five-year-old child, that he had sent a sexually explicit postcard to the child, and that Atwood had been carrying a five-inch knife.

On September 12, Atwood told McLean he would miss his weekly parole appointment because of an eye injury. McLean told Atwood of his father's accusations, and Atwood denied them.

On September 13, Atwood's parents banished him from their home. Atwood went to Tucson. On September 14, McLean searched Atwood's room in Los Angeles and found a stack of child pornography. Atwood's mother told McLean that Atwood was out visiting friends. Despite their knowledge of Atwood's antisocial behavior and parole violations in August and September, defendants failed to take steps to cause Atwood to be arrested.

On September 17, in Tucson, Atwood kidnapped, tortured, raped, and killed Vicki.

On September 18, McLean called Atwood's parents, who told him Atwood had moved in with friends in the Los Angeles area. McLean instructed Atwood's mother to have Atwood contact him by September 20.

On September 20, 1984, Atwood's father told McLean that Atwood was in Kerrville, Texas. Atwood was arrested in that city on a date and for reasons unspecified in the complaint. He was convicted in Arizona of kidnapping and murder in March 1987, and sentenced to death.

## DISCUSSION

### 1. *Governmental Immunity*

Plaintiffs' first contention, that defendants are not immune from liability, lacks merit. Both our Legislature and the courts have squarely rejected public liability for harm resulting from the failure to properly supervise a parolee.

Defendants are immunized by section 845.8 of the Government Code, which provides in relevant part: "Neither a public entity nor a public

employee is liable for: [¶] (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release." In addition, section 846 of the Government Code states, "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody." These statutes are clear and govern this case.

Our Supreme Court stated in *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 753-754 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]: "By their very nature parole and probation decisions are inherently imprecise. . . . [A] large number of parole violations occur. . . . Although we fully recognize that not all violations involve new or violent offenses, a significant proportion do. [¶] Notwithstanding the danger illustrated by the foregoing statistics, parole and probation release nonetheless comprise an integral and continuing part in our correctional system authorized by the Legislature, serving the public by rehabilitating substantial numbers of offenders and returning them to a productive position in society."

In a case very similar to this one, *Brenneman* v. *State of California* (1989) 208 Cal.App.3d 812 [256 Cal.Rptr. 363], the plaintiffs alleged that their child had been molested and murdered by a parolee. The appellate court upheld demurrers despite allegations of negligent supervision of the parolee and breach of a mandatory duty to conduct a reassessment of his risks and needs, stating that the allegations fit "squarely under Government Code section 845.8, subdivision (a)." (*Id.* at p. 821; see also *Duffy* v. *City of Oceanside* (1986) 179 Cal.App.3d 666 [224 Cal.Rptr. 879] [no liability for failure to properly supervise parolee]; *Martinez* v. *State of California* (1978) 85 Cal.App.3d 430 [149 Cal.Rptr. 519] [no liability for failure to properly supervise parolee]; *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698 [141 Cal.Rptr. 189] [no liability for failure to investigate and report probation violations to court].)

Plaintiffs attempt to avoid the obvious import of the statutes and case law by asserting an exception, breach of a "mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury [and that] an injury of that kind [was] proximately caused by its failure to discharge the duty . . . ." (Gov. Code, § 815.6.) They urge that defendants were required to arrest Atwood by section 3059 of the Penal Code, which provides, "If any paroled prisoner shall leave the state without permission of the Board of Prison Terms, he shall be held as an escaped prisoner and arrested as such."

We disagree. ■ A mandatory duty is one "which a governmental entity is required to perform, as opposed to a permissive power which

a governmental entity may exercise or not as it chooses." (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606].) Penal Code section 3059 does not specify who must arrest the parolee, or how long he must be held after his arrest. Moreover, the provision is part of a statutory scheme characterized by the broad discretion of the parole authority. (See *In re Powell* (1988) 45 Cal.3d 894, 902 [248 Cal.Rptr. 431, 755 P.2d 881].) Under the circumstances, it is not reasonable that ". . . the Legislature intended to impose a duty which would provide a basis for civil liability. [Citations.]" (*State of California* v. *Superior Court* (1992) 8 Cal.App.4th 954, 958 [10 Cal.Rptr.2d 527]; and see *Zolin* v. *Superior Court* (1993) 19 Cal.App.4th 1157, 1166 [23 Cal.Rptr.2d 871].)

Plaintiffs' position fails for a second reason. Liability under Government Code section 815.6 arises only where the statute creating the duty is designed to protect against the injury which occurs. The sparse legislative history involving paroles shows that Penal Code section 3059 was not intended to protect the public against the risk of criminal attack by a parolee who leaves the state without permission. Rather, the provision is aimed at keeping the parolee available to meet with the parole officer by subjecting him or her to arrest as an escapee.

Moreover, the alleged breach was not a legal or proximate cause of plaintiffs' injuries, as required by the statute. "Proximate cause ' "is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury . . . and without which such result would not have occurred." ' [Citation.]" (*State of California* v. *Superior Court* (1984) 150 Cal.App.3d 848, 857 [197 Cal.Rptr. 914].) Here, the failure to arrest Atwood was not in itself a cause of the injury, since arrest without a period of incarceration would not necessarily have prevented the crime. Incarceration, however, would have involved procedural steps involving the exercise of discretion and thus have broken the causal chain. (*Id.* at pp. 858-859.)

Plaintiffs also have failed to show any violation of the privileges and immunities clause of article IV of the Constitution of the United States. We fail to see how the provisions of the Victims of Crime Act (Gov. Code, § 13959 et seq.), which provide restitution assistance for California residents but not for nonresidents, could transform the state's traditional immunity from liability into unconstitutional activity. (See *Ostrager* v. *State Board of Control* (1979) 99 Cal.App.3d 1 [160 Cal.Rptr. 317] [rejecting challenges to Victims of Crime Act on privileges and immunities and equal protection grounds].)

## 2. Choice of Law

■ Plaintiffs' second contention, that the trial court erred in applying California law, also lacks merit. They have cited no case which stands for the proposition that when a state is sued in its own courts, it cannot claim the benefit of its own law of sovereign immunity. We are disinclined to create such a startling proposition on our own.

*Denham* v. *Farmers Ins. Co.* (1989) 213 Cal.App.3d 1061 [262 Cal.Rptr. 146], relied upon by plaintiffs, is distinguishable. There, the parties were all private citizens with the plaintiff residing in California and the defendant in Nevada. The subsequent bad faith claim against defendant's insurer involved a choice of law question as to whether to apply California law, which allowed third party bad faith claims, or Nevada law, which did not. The appellate court concluded that because (1) the accident happened in Nevada, and (2) Nevada had an interest in regulating and controlling the actions of its insurance companies, Nevada law should apply. In the case before us, however, the actions complained of occurred in California by a governmental entity and employee.

In *Hall* v. *University of Nevada* (1977) 74 Cal.App.3d 280 [141 Cal.Rptr. 439], also relied upon by plaintiffs, a Nevada state employee driving a vehicle owned by the state of Nevada was involved in a collision with a California resident in California. The appellate court rejected the contention that would have limited the defendant to Nevada's maximum liability of $25,000. The court held that California's interest in providing full protection to people injured on its highways outweighed Nevada's policy of limiting the liability of its residents.

In the present case, however, the acts of the state were carried out within its own jurisdiction in the furtherance of a strong public policy for parole and governmental immunity, thus supporting the conclusion that the applicable law here is that of California.

## 3. Due Process

■ Plaintiffs' third contention is unavailing. They assert they were deprived of their due process rights (42 U.S.C. § 1983) by McLean's failure to arrest Atwood, his release on parole, and McLean's failure to make mandatory home visits and to follow other mandatory provisions of California's parole procedures manual. These failings, however, are insufficient to remove this case from the general rule that members of the public have no constitutional right to recover damages from state employees who fail to

protect them from harm inflicted by third parties. (*DeShaney* v. *Winnebago Cty. Soc. Servs. Dept.* (1989) 489 U.S. 189 [103 L.Ed.2d 249, 109 S.Ct. 998] [no liability for failure of social workers to remove child from custody of abusive father].)

Moreover, Atwood did not identify the decedent as the target of his violence. There was no relationship between the state and the victim which would provide a basis for liability. (See *DeShaney* v. *Winnebago Cty. Soc. Servs. Dept.*, *supra*, 489 U.S. 189, 197-199 [103 L.Ed.2d at pp. 259-261].)

*Freeman* v. *Ferguson* (8th Cir. 1990) 911 F.2d 52, relied upon by plaintiffs, is distinguishable. There the court remanded to allow the plaintiffs an opportunity to plead affirmative acts by a police chief in aid of his friend, the murderer, to show "that the violence the decedents were subjected to was not solely the result of private action, but that it was also the result of an affirmative act by a state actor to interfere with the protective services which would have otherwise been available . . . ." (*Freeman* v. *Ferguson*, *supra*, 911 F.2d at p. 54.) Here, by contrast, McLean neither acted to create the danger, nor defeated anyone's chance for self-protection.

In *L.W.* v. *Grubbs* (9th Cir. 1992) 974 F.2d 119, also relied upon by plaintiffs, the court held that where the defendants knew that an incarcerated third party "had an extraordinary history of unrepentant violence against women and girls," and nevertheless assigned him and the plaintiff, a nurse, to work together by themselves after assuring plaintiff that she would not be working alone with violent offenders, they created the danger to which she fell victim. (*Id.* at p. 121.) By contrast, in this case McLean had no hand in placing the decedent near Atwood and did nothing to sanction his acts.

### 4. Federal Civil Rights Claim

In light of our holding regarding plaintiffs' claim for violation of their civil rights (42 U.S.C. § 1983), we need not address their fourth contention, that California's governmental immunity statutes do not apply to federal civil rights claims.

### 5. Tort Claim Act

Defendants assert that plaintiffs failed to comply with the Tort Claims Act. (Gov. Code, § 900 et seq.) Plaintiffs alleged compliance based upon the unavailability of information while the criminal prosecution was pending and their prosecution of an Arizona suit against the same parties and for the same relief from August 1986 until December 1991. Although it was raised

below, the trial court apparently did not reach that issue. In light of our decision on plaintiffs' assignments of error, we need not address whether they have sufficiently pleaded tolling.

## Disposition

The judgment is affirmed.

Boren, P. J., and Fukuto, J., concurred.