[No. E025774. Fourth Dist., Div. Two. Sept. 26, 2000.]

RICARDO LEYVA, Plaintiff and Appellant, v.
JIM NIELSEN, as Chairman, etc., Defendant and Respondent.

1062

**COUNSEL**

Ricardo Leyva, in pro. per., for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Margaret A. Rodda, Assistant Attorney General, Richard J. Rojo and Raymond L. Fitzgerald, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—Plaintiff Ricardo Leyva, a prison inmate, filed this personal injury action against Jim Nielsen, Chairman of the Board of Prison Terms. The trial court sustained a demurrer to the complaint and plaintiff Leyva appeals.

## STANDARD OF REVIEW

"Where a trial court sustains a demurrer without leave to amend, we review such action under the abuse of discretion standard. [Citation.] If there is a reasonable possibility that the pleading can be cured by an amendment, the trial court's ruling will be reversed. [Citation.] [¶] On review, we examine the Complaint's factual allegations to determine whether they state a cause of action on any available legal theory. [Citation.] We treat the demurrer as admitting all material facts which were properly pleaded. [Citation.] However, we will not assume the truth of contentions, deductions, or conclusions of fact or law [citation] and we may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken. [Citation.]" (*Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143 [39 Cal.Rptr.2d 752].)

## ALLEGATIONS OF THE COMPLAINT

The complaint purports to allege causes of action for personal injury (fraud and deceit) and it seeks damages of $25,000 for alleged breach of a plea agreement and $25,000 for intentional infliction of emotional distress.

The specific allegations of the complaint, which we take as true for the purpose of testing its sufficiency, are as follows. On December 8, 1980, plaintiff signed a plea agreement in which he agreed to a 15-year-to-life sentence. He allegedly became eligible for parole on May 21, 1990, after serving 10 years in prison.

In July 1996, after 16 years in prison, the Board of Prison Terms conducted a parole hearing for plaintiff and declined to release him on parole. It found the circumstances of the crimes were egregious, and that plaintiff had not participated in self-help and therapy programs.

Plaintiff apparently appealed the decision denying parole. The appeal was dismissed as lacking merit, and plaintiff was given the following explanation: "The earliest a prisoner sentenced to state prison for the term of 15 years to life may be released to parole is after having served 10 years. Being

eligible and being found <u>suitable</u> are two separate things. Just because the Court may have told you that you would be eligible for parole in 10 years doesn't mean that the [Board of Prison Terms] would find you suitable." (Original underscore.)

The complaint further alleges that, on May 22, 1998, a news article was posted on the Solano Prison law library bulletin board. The article included portions of an interview with defendant Nielsen, Chairman of the California Board of Prison Terms. A sidebar accompanying the article is titled "Parole conditions." It states: "Goals that may be set for inmates sentenced to life in prison to determine if they are suitable for parole: [¶] Complete 15 to 21 years in prison (if sentenced to 15-to-life)." In addition to the time goal, other goals are stated, including such items as "Earn a job-skills certificate."

Plaintiff further alleges that the statement shows that the Board of Prison Terms had no intention of releasing an inmate in his position after 10 years in prison. Instead, it always intended to require such an inmate to serve at least 15 years in prison. Since that fact was not disclosed to him when he signed the plea agreement, he alleges that the plea agreement was based on fraud and deceit. He also contends that the effect of the board's refusal to consider him eligible for parole is to extend his sentence in violation of ex post facto principles.

On July 20, 1998, plaintiff presented a government tort claim to the State Board of Control. It responded by advising him that his "claim was filed more than one year from the date of the incident that is the basis of the claim, and it is too late for the Board to consider an application to present a late claim."

PROCEDURAL HISTORY

Plaintiff's complaint was filed on March 17, 1999. On May 25, 1999, defendant demurred to the complaint on four grounds: (1) plaintiff failed to file a timely tort claim, (2) ultimate facts were not pled stating an actionable claim, (3) defendant is immune from liability under Government Code[1] section 845.8,[2] subdivision (a), and (4) the complaint was uncertain, ambiguous and unintelligible.

Plaintiff responded that (1) his claim was timely filed because it was filed two months after the cause of action (violation of plea agreement) became

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

[2]Section 845.8 states, in relevant part, "Neither a public entity nor a public employee is liable for: [¶] (a) Any injury resulting from determining whether to parole or release a prisoner . . . ."

known to him by reading the newspaper article on May 22, 1998, and this filing was well within the time limit stated in section 911.2[3] for injury to a person; (2) section 845.8, subdivision (a), does not apply in this case because the issue he raised is the number of years that a prisoner must be incarcerated before being eligible for parole not a discretionary decision whether to grant parole or not; (3) he had pled sufficient facts, statutes and constitutional provisions in his complaint to constitute a cause of action; and (4) the demurrer should be overruled because defendant was required to file the demurrer within 30 days after he was served with the complaint and he failed to do so.

The trial court sustained the demurrer without leave to amend based on defendant's first and third grounds stated in the demurrer; i.e., that plaintiff failed to file a timely tort claim, and defendant is immune from liability under section 845.8, subdivision (a). Plaintiff then filed a notice of appeal from judgment of dismissal.

After examining the record, we find that we do not need to determine whether the trial court's decision on the first ground was proper or not because it is clear that defendant, as Chairman of the Board of Prison Terms, is immune from this type of suit under sections 845.8 and 820.2.[4]

### STATUTORY IMMUNITY FROM SUIT

■  Plaintiff contends that the trial court erred in sustaining the demurrer on grounds that defendant is immune from liability. He argues that section 845.8, subdivision (a) is not applicable since the issue here is whether defendant acted fraudulently in extending his *eligibility* for parole from 10 to 15 years. In other words, plaintiff contends the statute does not apply because defendant was not making a decision whether to parole or release him from custody. Instead, the decision was a decision to unilaterally increase the time he must spend in custody before being considered eligible for parole.

---

[3]Section 911.2 states, "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than six months after the accrual of the cause of action."

[4]We also note our disagreement with the basic premise of the complaint. Plaintiff *agreed* to a plea bargain of 15 years to life. Although he could expect to receive statutory good time credits, he could not reasonably expect to be released before expiration of the minimum sentence for his offense of second degree murder, i.e., before 15 years had elapsed.

In addition, although not advanced by respondent, there is a strong argument that the appeal is moot because 15 years elapsed on May 21, 1995, and because the board has determined that, as of 1996, plaintiff was not a suitable candidate for parole due to the circumstances of the killing and plaintiff's subsequent failure to take advantage of prison programs. Since he was not suitable for parole, it is irrelevant whether he was eligible for parole or not.

We disagree. Section 845.8 is specifically intended to extend immunity to public entities and public officials for injuries resulting from their decisions to release or not release a prisoner or for injuries inflicted by escaped prisoners. The classic case is one in which a prisoner is paroled and the prisoner then commits another crime. (*Fleming v. State of California* (1995) 34 Cal.App.4th 1378 [41 Cal.Rptr.2d 63].) However, that specific immunity is only part of the discretionary immunity afforded such entities and officials by section 820.2. (Recommendation Relating to Sovereign Immunity (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 801.) Section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

The Chairman of the Board of Prison Terms "shall be the administrative head of the board and shall exercise all duties and functions necessary to insure that the responsibilities of the board are successfully discharged." (Pen. Code, § 5075.) "The Board of Prison Terms shall succeed to and shall exercise and perform all powers and duties granted to, exercised by, and imposed upon the Adult Authority, the California Women's Board of Terms and Paroles, and the Community Release Board." (Pen. Code, § 5078, subd. (a).) These duties include the duty to "consider the request of any inmate regarding the length of his or her parole and the conditions thereof." (Pen. Code, § 3000, subd. (b)(3) & (6).)

The board is therefore entrusted with "the power to allow prisoners imprisoned in the state prisons pursuant to subdivision (b) of Section 1168 to go upon parole outside the prison walls and enclosures." (Pen. Code, § 3040.) Penal Code section 3041 sets out certain minimum periods of parole, and Penal Code section 3046 states a minimum period of confinement for persons incarcerated for an indeterminate life term. Since the record here does not indicate the particulars of plaintiff's crime or sentencing, the application of these sections to plaintiff cannot be determined.

Nevertheless, it is obvious, as plaintiff argues, that the process of considering an application for parole consists of determining both the prisoner's eligibility for parole, i.e., whether he has served the requisite minimum period of confinement, and his or her suitability for parole.[5] Although plaintiff seeks to limit his complaint to eligibility issues to avoid the effect of section 845.8, it is clear that the determination of whether a prisoner should be paroled is discretionary.

---

[5]In determining eligibility for parole, the Board of Prison Terms will calculate and consider custody credits earned by the prisoner under Penal Code section 2933 and related sections. (See, e.g., *In re Monigold* (1988) 205 Cal.App.3d 1224 [253 Cal.Rptr. 120].) Obviously, it

The Supreme Court has described the parole release decision as follows: "The parole-release decision, however, is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole determination, like a prisoner-transfer decision, may be made, 'for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate.' [Citation.] The decision turns on a 'discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done.' [Citation.]" (*Greenholtz v. Nebraska Penal Inmates* (1979) 442 U.S. 1, 9-10 [99 S.Ct. 2100, 2105, 60 L.Ed.2d 668].)

Since the parole determination process is discretionary, the Chairman of the Board of Prison Terms, the other commissioners, and deputy commissioners are immune from suit under sections 845.8 and 820.2 for injuries allegedly resulting from their discretionary decisions.

Accordingly, the trial court did not err in sustaining defendant's demurrer.

### DISPOSITION

The judgment of dismissal is affirmed.

McKinster, J., and Richli, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 10, 2001.

---

must also consider whether the possibility of parole is precluded by the statutes applicable to the prisoner's specific crime and sentence.