Opinion
CORRIGAN, J.
In 2007, Gilton Pitre was paroled from state prison. Before his release, the State Department of Mental Health (DMH) assessed *344 whether he should be civilly committed under the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.). Ultimately, the Director of Mental Health did not request a petition for commitment and Pitre left prison. Four days later, he raped and murdered plaintiff Elaina Novoa’s 15-year-old sister, Alyssa Gomez.
Plaintiff sued DMH and two of its acting directors, claiming the death was caused by defendants’ failure to discharge mandatory duties imposed by the SVPA. The superior court overruled a demurrer. Defendants petitioned for a writ of mandate. The Court of Appeal issued an order to show cause, and concluded that while the SVPA imposed a mandatory duty on defendants, the alleged breach was not the proximate cause of Gomez’s death. We affirm.
I. BACKGROUND
A. The SVPA
The SVPA authorizes the involuntary civil commitment of a person who has completed a prison term but is found to be a sexually violent predator (SVP). (Reilly v. Superior Court (2013) 57 Cal.4th 641, 646 [160 Cal.Rptr.3d 410, 304 P.3d 1071]; People v. McKee (2010) 47 Cal.4th 1172, 1185 [104 Cal.Rptr.3d 427, 223 P.3d 566] (McKee).) The SVPA’s purposes are “ ‘to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders.’ ” (McKee, at p. 1203.) The Welfare and Institutions Code sets forth the relevant procedures. (Welf. & Inst. Code, § 6600 et seq.)[1]
Section 6600, subdivision (a)(1) defines an SVP as “a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.”[2] “Whenever the Director of Corrections determines that an individual who is in custody . . . may be [an SVP], the director shall. . . refer the person for evaluation . . . .” (Former § 6601, subd. (a)(1).)[3] The statutory scheme establishes a multiple-level review for inmates who may be SVPs. An inmate who is referred by the Director of Corrections is then “screened by the Department of Corrections . . . based on whether the *345 person has committed a sexually violent predatory offense and on a review of the person’s social, criminal, and institutional history. This screening shall be conducted in accordance with a structured screening instrument developed and updated by [DMH] in consultation with the Department of Corrections. If as a result of this screening it is determined that the person is likely to be [an SVP], the Department of Corrections shall refer the person to [DMH] for a full evaluation of whether the person [is an SVP].”[4] (Former § 6601, subd. (b).)
If an inmate is referred for full evaluation, “[DMH] shall evaluate the person in accordance with a standardized assessment protocol, developed and updated by [DMH], to determine whether the person is [an SVP] . . . .” (§ 6601, subd. (c).) The scope of the evaluation is codified in some detail. “The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder.” (Ibid.) Moreover, “the person shall be evaluated by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist, designated by the Director of Mental Health. If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of Mental Health shall forward a request for a petition for commitment . . .” to the designated counsel of the county in which the inmate was convicted.[5] (Former § 6601, subd. (d).)
If the evaluators disagree about whether the person meets the criteria, “the Director of Mental Health shall arrange for further examination of the person by two independent professionals . . . .” (Former § 6601, subd. (e).) “[A] petition to request commitment . . . shall only be filed if both independent professionals . . . concur that the person meets the criteria for commitment . . . .” (§ 6601, subd. (f).) When that requirement is met, “the Director of Mental Health shall forward a request for a petition to be filed for commitment . . .” to the designated counsel of the county. (Former § 6601, subd. (h).) If counsel concurs with the recommendation, “a petition for commitment shall be filed in . . . superior court. . . .” (§ 6601, subd. (i).) The court thereafter “shall review the petition and shall determine whether there is probable cause to believe that the individual ... is likely to engage in *346 sexually violent predatory criminal behavior upon his or her release.” (§ 6602, subd. (a).) The court must order a trial if there is probable cause, and it must dismiss the petition if there is not. (Ibid.)
The inmate is “entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports.” (§ 6603, subd. (a).) There can be no civil commitment under the SVPA unless the trier of fact determines beyond a reasonable doubt that the person is an SVP. (§ 6604.) A person found to be an SVP “shall be committed for an indeterminate term to the custody of [DMH] for appropriate treatment and confinement in a secure facility . . . .” (Ibid.) Annual examinations are conducted to assess whether the person is still likely to engage in sexually violent criminal behavior if discharged. (§ 6605, subd. (a).)
B. Factual and Procedural History
On demurrer review, we accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice. (Evans v. City of Berkeley (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394].) In 1996, Pitre raped his female roommate. He was convicted and sentenced to a determinate term in state prison. In 2007, he was scheduled for parole. DOC determined that Pitre was likely to be an SVP, and referred him to DMH for evaluation. DMH, however, did not conduct a full evaluation by two psychologists or psychiatrists, or one of each, as required by statute. Instead, a single evaluator reviewed records received from DOC, and on that limited basis determined that Pitre was suitable for release. The complaint describes this limited evaluation by a single evaluator as a “Level II” screening under DMH regulations in effect at the time. After reviewing a person’s records, a “Level II” evaluator could either close a case or refer it for a full “Level III” assessment by two evaluators. Because the Director of Mental Health did not forward a request for a petition for commitment, Pitre was paroled. Four days later, he raped and murdered Gomez.[6]
Plaintiff sued, asserting claims for breach of mandatory duty (Gov. Code, § 815.6), negligence, and negligence per se. She also sought a writ of mandate requiring defendants to comply with SVPA evaluation procedures (Code Civ. Proc., § 1085). She claimed that if defendants had conducted the full evaluation required by statute, “any two competent, ethical evaluators would have determined [Pitre] met the criteria for civil commitment,” based *347 on “the circumstances of his 1996 offense, as detailed in the records,” which “clearly and unequivocally demonstrate the sadistic nature of his crime.” She alleged that the single evaluator who reviewed Pitre’s case stated that if he had had access to all the records and considered the sadistic nature of Pitre’s 1996 crime, he would have concluded that Pitre was an SVP. Plaintiff further alleged that most sexual predators who reoffend exhibit “tell-tale signs,” and that a full evaluation would likely have detected such signs in Pitre.
Had there been two positive findings on Pitre’s SVP status, DMH was obligated to submit a request for a civil commitment to designated counsel. Plaintiff claimed that a petition has been filed in every case referred by DMH following two positive evaluations. Had a petition been filed, Pitre’s case would have gone to trial, the complaint alleged, and “he would have been civilly committed.”
Defendants demurred, arguing that plaintiff failed to state a cause of action and that they were immune from liability.[7] The superior court overruled the demurrer. On writ review, the Court of Appeal concluded that defendants were not immune from suit. It held that the SVPA imposes a mandatory duty to use two evaluators. However, the court also ruled that plaintiff could not, as a matter of law, establish the breach of that duty as the proximate cause of Gomez’s death. The court further held that plaintiff failed to show she could amend her complaint to cure the defect as to proximate cause. Accordingly, it directed the superior court to sustain defendants’ demurrer to the first and second causes of action. The writ proceeding in the trial court requiring defendants to discharge their mandatory duties under the SVPA was allowed to go forward.
II. DISCUSSION
A. Sovereign Immunity and Duty
Traditionally, the doctrine of sovereign immunity shielded states from both suit and liability. (Franchise Tax Bd. v. Superior Court (2011) 51 Cal.4th 1006, 1012 [125 Cal.Rptr.3d 158, 252 P.3d 450]; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 203, p. 344.) Under the doctrine, a state is immune except to the extent it consents to suit. (See Prosser & Keeton, Torts (5th ed. 1984) § 131, p. 1033.) In Muskopf v. Corning Hospital Dist. (1961) 55 Cal.2d 211, 221 [11 Cal.Rptr. 89, 359 P.2d 457], this court abolished the rule of government immunity from tort liability.
*348 The Legislature responded by temporarily reinstating the former law, then replacing it in 1963 with the Government Claims Act (Gov. Code, § 810 et seq.), which sets out a comprehensive scheme of governmental liability and immunity statutes. (Thomas v. City of Richmond (1995) 9 Cal.4th 1154, 1157 [40 Cal.Rptr.2d 442, 892 P.2d 1185]; 5 Witkin, Summary of Cal. Law, supra, Torts, § 216, p. 366.) Under the act, a public entity is not liable “[e]xcept as otherwise provided by statute.” (Gov. Code, § 815; see Hoff v. Vacaville Unified School Dist. (1998) 19 Cal.4th 925, 932 [80 Cal.Rptr.2d 811, 968 P.2d 522].) One such statute is Government Code section 815.6, which provides, “Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.” (Gov. Code, § 815.6.) Thus, the government may be liable when (1) a mandatory duty is imposed by an enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury.
Even when a duty exists, California has enacted specific immunity statutes that, if applicable, prevail over liability provisions. (Creason v. Department of Health Services (1998) 18 Cal.4th 623, 635 [76 Cal.Rptr.2d 489, 957 P.2d 1323] (Creason); 5 Witkin, Summary of Cal. Law, supra, Torts, § 226, p. 375.) However, the first question is whether the plaintiff has alleged the breach of a mandatory duty. (Creason, at p. 630.) If there is no actionable duty, the question of immunity does not arise. (Ibid.; Caldwell v. Montoya (1995) 10 Cal.4th 972, 985 [42 Cal.Rptr.2d 842, 897 P.2d 1320]; 5 Witkin, Summary of Cal. Law, supra, Torts, § 225, p. 374.)
Courts have delineated what is necessary to establish a mandatory duty. “First and foremost, ... the enactment at issue [must] be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken.” (Haggis v. City of Los Angeles (2000) 22 Cal.4th 490, 498 [93 Cal.Rptr.2d 327, 993 P.2d 983] (Haggis).) “It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion.” (Ibid., italics added.) Moreover, “[c]ourts have . . . [found] a mandatory duty only if the enactment ‘affirmatively imposes the duty and provides implementing guidelines.’ ” (Guzman v. County of Monterey (2009) 46 Cal.4th 887, 898 [95 Cal.Rptr.3d 183, 209 P.3d 89] (Guzman).) “ ‘ “[T]he mandatory nature of the duty must be phrased in explicit and forceful language.” [Citation.] “It is not enough that some statute contains mandatory language. *349 In order to recover plaintiffs have to show that there is some specific statutory mandate that was violated by the [public entity] ....”’ [Citations.]” (Id. at pp. 910-911.)
Whether an enactment imposes “a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts.” (Creason, supra, 18 Cal.4th at p. 631.) The enactment’s “language ‘is, of course, a most important guide in determining legislative intent, [but] there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity’s or officer’s exercise of discretion.’ ” (Haggis, supra, 22 Cal.4th at p. 499.) For example, the word “shall” is “mandatory” for purposes of the Welfare and Institutions Code. (§ 15; Gov. Code, § 14 [same].) “However, as we have emphasized, this term’s inclusion in an enactment does not necessarily create a mandatory duty . . .” within the meaning of Government Code section 815.6. (Guzman, supra, 46 Cal.4th at p. 899.)
We have recognized that while the “exercise of discretion may often mark the dividing line between a duty that is mandatory and one that is not [citation], that line is sometimes difficult to draw.” (Guzman, supra, 46 Cal.4th at p. 899.) “[I]n cases not involving a public entity’s ‘ “quasi-legislative policy-making” ’ [citation], the inquiry should focus on whether the entity must ‘render a considered decision’ [citation], one requiring its expertise and judgment [citations].” (Ibid.) Creason is illustrative. Sierra Creason and her parents sued the Department of Health Services (DHS) after neonatal testing failed to disclose that Sierra was bom without a functioning thyroid gland. (Creason, supra, 18 Cal.4th at pp. 626-627.) The complaint alleged that the test DHS designated was deficient, resulting in failure to diagnose Sierra’s congenital hypothyroidism, which in turn led to a significant delay in treatment and irreversible injury. (Id. at p. 627.)
The applicable statutory scheme, the Hereditary Disorders Act (Health & Saf. Code, § 124975 et seq.), provided; “[DHS] shall establish a genetic disease unit. . . ,” and “[t]he unit shall promote a statewide program of . . . testing . . . and shall have the responsibility of designating tests and regulations to be used in executing this program. [¶] The . . . tests . . . shall be in accordance with accepted medical practices and shall be administered to each child bom in California once the department has established appropriate regulations and testing methods.” (Id., § 125000, subd. (a).) DHS thus had a mandatory duty to establish a neonatal testing program. However, the particular standards for testing and the protocol for reporting were left to its discretion and judgment.
*350 Had DHS taken no action at all, it would have failed'to discharge its mandatory duty to designate the tests to be used. But DHS discharged that duty, and the plaintiffs did not allege otherwise. Instead, they argued that the way DHS exercised its judgment in designating tests and implementing procedures caused Sierra’s injury. (Creason, supra, 18 Cal.4th at pp. 627-628.) The Creason court concluded that a demurrer was properly granted. Although DHS’s duty to designate tests was mandatory, its formulation of those tests and related reporting standards was discretionary and could not give rise to liability. (Id. at pp. 629, 635.)
Creason and similar cases illustrate the following distinction. A mandatory duty is created only when an enactment requires an act that is clearly defined and not left to the public entity’s discretion or judgment. (County of Los Angeles v. Superior Court (2012) 209 Cal.App.4th 543, 550-551 [147 Cal.Rptr.3d 33] (Faten).) Such an act is mandated only to the extent of the enactment’s precise formulation. When the enactment leaves implementation to an exercise of discretion, “lending] itself to a normative or qualitative debate over whether [the duty] was adequately fulfilled,” an alleged failure in implementation will not give rise to liability, (de Villers v. County of San Diego (2007) 156 Cal.App.4th 238, 260 [67 Cal.Rptr.3d 253].)
Applying these principles here, we hold that the complaint sufficiently alleges a breach of DMH’s mandatory duty to conduct an evaluation with two evaluators. The SVPA specifies that an inmate referred by DOC “shall be evaluated by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist, designated by the Director of Mental Health.” (Former § 6601, subd. (d), italics added.) This language is clear, conferring no discretion as to the number of evaluators. (Haggis, supra, 22 Cal.4th at p. 502; Faten, supra, 209 Cal.App.4th at p. 551.) Moreover, the use of two evaluators is critical to the SVPA process. A petition for commitment cannot be requested unless both evaluators agree that a person meets the criteria for SVP status. (§ 6601, subd. (d).) If they disagree, the Director of Mental Health must arrange for two independent evaluators to conduct a further examination. Both must concur that the inmate meets the criteria before a commitment petition can be requested. (§ 6601, subds. (e) & (f).) In sum, the enactment’s language, taken together with the design of the SVPA process, makes it clear that the Legislature “ ‘intended to foreclose . . . [the] exercise of discretion’ ” with regard to how many evaluators must be designated to assess persons referred by DOC. (Haggis, at p. 499.)
Defendants concede they are obliged to “designate two mental health professionals to conduct the ‘full evaluation.’ ” Citing the discretion woven throughout the SVPA process, however, they argue that the obligation does not amount to a mandatory duty. Defendants note, for example, that the *351 Director of Corrections first has discretion to determine whether someone might be an SVP, that DOC’s subsequent screening is discretionary, and that the evaluators designated by DMH have discretion to determine whether a person meets the SVP criteria. Defendants conclude from this that the entire SVPA screening process, including their duty to designate two evaluators, should be considered discretionary. The argument fails. Whatever discretion may be afforded by other provisions, the statute requiring the Director of Mental Health to designate two evaluators affords none.
The only other mandatory duty identified in the complaint is an alleged obligation on the part of DMH to conduct in-person examinations of all referred inmates. The Court of Appeal properly rejected this claim. The SVPA states that after an inmate is referred for a full evaluation, DMH “shall evaluate the person in accordance with a standardized assessment protocol” including specific risk factors. (§ 6601, subd. (c), italics added.) However, nowhere does the statute impose a specific requirement for in-person examination of referred inmates. As Guzman explained, a mandatory duty must be based on an enactment phrased in explicit and forceful language. (Guzman, supra, 46 Cal.4th at pp. 910-911.) Uncodified details of the SVP evaluation protocol are left to DMH’s judgment and discretion.[8] (§ 6601, subd. (c).) Without any specific statutory command, DMH is not subject to a mandatory duty to conduct in-person evaluations of all referred inmates. (Guzman, at p. 910.)[9]
As to the second element of Government Code section 815.6, there is no dispute that harm to the public caused by an SVP’s release is the kind of risk the SVPA was designed to forestall.[10] The particular mandatory duty at issue here requires the designation of two evaluators. This element of *352 redundancy built into the review process serves the interest of the inmate as well as the governmental interest in protecting public safety. However, the potential dual benefit does not defeat plaintiff’s showing. We have recognized that public safety is a particularly powerful purpose of the SVPA evaluation process. (Moore v. Superior Court (2010) 50 Cal.4th 802, 825 [114 Cal.Rptr.3d 199, 237 P.3d 530]; People v. Superior Court (Ghilotti) (2002) 27 Cal.4th 888, 912 [119 Cal.Rptr.2d 1, 44 P.3d 949].) It is clear that the requirement of two evaluators was designed, in part, to guard against the risk that an SVP might be released.
B. Proximate Causation
If the first two elements set out in Government Code section 815.6 are satisfied, “the next question is whether the breach . . . was a proximate cause of the plaintiff’s injury.” (Guzman, supra, 46 Cal.4th at p. 898; see Haggis, supra, 22 Cal.4th at p. 499.)[11] We have recognized that proximate cause has two aspects. “ ‘One is cause in fact. An act is a cause in fact if it is a necessary antecedent of an event.’ ” (Ferguson v. Lieff, Cabraser, Heimann & Bernstein (2003) 30 Cal.4th 1037, 1045 [135 Cal.Rptr.2d 46, 69 P.3d 965] (Ferguson).) This is sometimes referred to as “but for” causation. (E.g., Cabral v. Ralphs Grocery Co. (2011) 51 Cal.4th 764, 784 [122 Cal.Rptr.3d 313, 248 P.3d 1170].)[12]
*353 The second aspect of proximate cause “focuses on public policy considerations. Because the purported [factual] causes of an event may be traced back to the dawn of humanity, the law has imposed additional ‘limitations on liability other than simple causality.’ [Citation.] ‘These additional limitations are related not only to the degree of connection between the conduct and the injury, but also with public policy.’ [Citation.] Thus, ‘proximate cause “is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor’s responsibility for the consequences of his conduct.” ’ [Citation.]” (Ferguson, supra, 30 Cal.4th at p. 1045.) As Witkin puts it, “[t]he doctrine of proximate cause limits liability; i.e., in certain situations where the defendant’s conduct is an actual cause of the harm, the defendant will nevertheless be absolved because of the manner in which the injury occurred. . . . Rules of legal cause . . . operate to relieve the defendant whose conduct is a cause in fact of the injury, where it would be considered unjust to hold him or her legally responsible.” (6 Witkin, Summary of Cal. Law, supra, Torts, § 1186, p. 553.)
“Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint. . . . Nevertheless, where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact.” (Weissich v. County of Marin (1990) 224 Cal.App.3d 1069, 1084 [274 Cal.Rptr. 342], citations omitted; see 6 Witkin, Summary of Cal. Law, supra, Torts, § 1184, pp. 551-552; Van Alstyne et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 2015) § 9.38, pp. 530-530.2.)
The Court of Appeal below relied on a line of cases decided at the pleading stage. All held that proximate cause was not established when a governmental defendant’s failure to act allegedly caused injury, but the chain of causation included discretionary determinations for which no liability could be imposed. First in this line is Whitcombe v. County of Yolo (1977) 73 Cal.App.3d 698 [141 Cal.Rptr. 189] (Whitcombe). There, a probationer with severe mental disorders was arrested but released on bail. Thereafter, he assaulted and severely injured the plaintiffs. They sued the county, its probation department, and probation officers, claiming the defendants had breached a mandatory duty to investigate the incident leading to the arrest and report the probation violation to the court. (Id. at pp. 702-703.) A demurrer was sustained for failure to state a cause of action. (Id. at p. 702.) The Court of Appeal affirmed, concluding the plaintiffs could not establish that the alleged breaches were the proximate cause of their injuries. (Id. at p. 707.)
*354 The Whitcombe court noted that the grant or revocation of probation was left to the discretion of the trial court, which was not bound by a probation officer’s report or recommendation, or by any particular fact in the record. “Rather, ‘[i]t must be guided by considerations pertaining to psychology, sociology and penology, or, in the words of the code, to “the ends of justice”; by general rules of policy which have not been and in the nature of the case should not be crystallized into positive or definite rules of law.’ [Citation.]” (Whitcombe, supra, 73 Cal.App.3d at p. 708.) “In view of the latitude accorded the trial court,” the claim that the failure to investigate and report the assailant’s violations proximately caused the plaintiff’s injuries was “specious.” (Ibid.) Whether or not the trial court reviewed the probation reports, “the proximate cause of [the plaintiffs’] injuries would, at best, be the court’s considered decision; manifestly an act immunized from liability under Government Code section 845.8, subdivision (a).”[13] (73 Cal.App.3d at p. 708.)
In State of California v. Superior Court (1984) 150 Cal.App.3d 848 [197 Cal.Rptr. 914] (Perry), the plaintiffs alleged they were defrauded by a property manager licensed by the Department of Real Estate. They sued, claiming the Real Estate Commissioner breached his mandatory duty to investigate a prior fraud complaint against the manager. (Id. at p. 852.) The Court of Appeal agreed with the plaintiffs that the commissioner had a mandatory duty to investigate complaints, and that their injury was the kind the statutory mandate was intended to protect against. (Id. at pp. 855-856.) However, relying on Whitcombe, the court held the plaintiffs could not establish that the alleged breach was the proximate cause of their loss. “[E]ven had the commissioner used due care to investigate the . . . complaint, and had discovered . . . wrongdoing, there is no reasonable assurance that sanctions would have been imposed that would have prevented plaintiffs’ subsequent losses.” (Id. at p. 857.) “The commissioner’s mandatory statutory duty to ‘investigate’ the . . . complaint may not reasonably be read as imposing a mandatory duty ... to take action in the event the . . . investigation disclose[d] evidence of wrongdoing. Indeed, the Business and Professions Code specifically allows the commissioner discretion as to what action, if any, he deems appropriate to deal with transgressing licensees.” (Id. at p. 858.)
“Moreover, he cannot act unilaterally to suspend or revoke a license; rather, suspension or revocation can occur only following a formal adjudicatory process at which accusations have to be proved by the Department of Real Estate .... [Citation.] In addition, had the accusations been sustained, *355 and had the commissioner exercised his discretionary power to impose discipline [citation], that discipline could have been in the form of a license suspension for as little as 15 days [citation] — a penalty that would not have had any obvious effect on plaintiffs’ losses. [¶] In short, several procedural steps lie between an initial investigation that discloses evidence of wrongdoing and any eventual imposition of effective sanctions against an offending real estate agent. The causal link is thus tenuous at best.” (Perry, supra, 150 Cal.App.3d at pp. 858-859, fn. omitted.) The Perry court further noted that “plaintiffs’ proximate cause argument leads them inexorably into immunities that insulate the commissioner from liability,” because the commissioner’s discretionary enforcement alternatives were statutorily immunized. (Id. at p. 859, fn. 8.)
The third case in this line of authority is Fleming v. State of California (1995) 34 Cal.App.4th 1378 [41 Cal.Rptr.2d 63] (Fleming). There, a parolee committed murder. The victim’s family alleged that the killer’s parole officer had breached a mandatory duty to arrest him for a parole violation. The trial court sustained a demurrer. (Id. at pp. 1381-1382.) The Court of Appeal affirmed. It reasoned in part that “the failure to arrest [the parolee] was not in itself a cause of the injury, [because] arrest without a period of incarceration would not necessarily have prevented the crime. Incarceration, however, would have involved procedural steps involving the exercise of discretion and thus have broken the causal chain.” (Id. at p. 1384, citing Perry.)
After reviewing these cases, the Court of Appeal below concluded that “the distance between defendant’s alleged breach of a mandatory duty and plaintiff’s injuries is too [great] to support a Government Code section 815.6 action.” Even if DMH had conducted a full evaluation by appointing a second evaluator, the second evaluation would have had to disagree with the first and conclude that Pitre was an SVP; two independent evaluators would then have had to agree that he was an SVP; the designated counsel would have had to make a discretionary decision to file a civil commitment petition; and the trial court would have to have made a discretionary probable cause determination. Ultimately, the trier of fact would have had discretion to deny the petition. We agree with the court below that under the facts pleaded here, proximate cause is absent as a matter of law.
The only mandatory duty established by the complaint’s allegations is the duty to use two evaluators; the details of the manner in which each evaluator conducts the review are discretionary, so long as they include the statutory criteria. Thus, no actionable breach of duty can be found in the single evaluator’s failure to conclude that Pitre was an SVP. Nor can plaintiff hypothesize a positive finding by that evaluator as a link in the chain of proximate causation. Instead, she must posit a subsequent unbroken series of *356 discretionary findings contradicting the first evaluator’s conclusion and leading to civil commitment. And as in Perry, none of these intermediate findings could individually have determined the outcome. (Perry, supra, 150 Cal.App.3d at pp. 858-859.) Pitre’s commitment could only have occurred after a multiple-stage review process culminating in a trial and a verdict reached beyond a reasonable doubt. Plaintiff’s showing of “but for” causation is weak, because with each step in the review process the results become more speculative. As explained in Viner v. Sweet, supra, 30 Cal.4th at page 1241, the purpose of the “but for” requirement is to safeguard against speculative and conjectural claims.
The policy considerations bearing on the question of proximate cause are also a considerable obstacle to plaintiff’s claim. It can always be argued that governmental discretion could only have reasonably been exercised in one way. Yet such arguments turn on questions of degree, and indeed are in tension with the very idea of discretion. We do not hold that the intervention of any discretionary decision between breach of a mandatory duty and a subsequent injury will always foreclose a finding of proximate cause.[14] Nor do we hold that proximate cause can never be established if a mandatory duty imposed by the SVPA is breached. For instance, if DMH failed to evaluate an inmate at all, or neglected to forward a request for a civil commitment after two evaluators found an inmate to be an SVP, a cause of action would not necessarily be barred simply because subsequent discretionary decisions would have been required to prevent the inmate’s release.
However, the breach of duty in this case did not result in the absence of any evaluation, or the failure to act on evaluations as required by law. Plaintiff’s claim, while premised on the breach of a mandatory duty, is in effect a complaint about how the evaluation of Pitre was performed. We note that if the review conducted by the single DMH evaluator had been performed by DOC at the previous stage of the review process, Pitre would have been released without any referral to DMH, and no cause of action would lie. Under these circumstances, as a policy matter, DMH’s failure to appoint a second evaluator cannot properly be considered a proximate cause of Pitre’s *357 heinous crime. (See 6 Witkin, Summary of Cal. Law, supra, Torts, § 1186, p. 553; Ferguson, supra, 30 Cal.4th at p. 1045.)[15]
Accordingly, we conclude that plaintiff’s showing fails under both aspects of the proximate cause determination. As a matter of cause in fact it is conjectural, depending on a long series of determinations that would have been required after DMH’s breach in order for the injury to have been prevented. As a matter of policy it is problematic, because it trenches closely upon the discretionary functions of the evaluation process established by the SVPA.
Plaintiff argues that Whitcombe, Perry, and Fleming are distinguishable because none of those cases involved breach of a mandatory duty. The assertion is unsupported. The Perry court acknowledged a mandatory duty. (Perry, supra, 150 Cal.App.3d at p. 855.) The Whitcombe and Fleming courts necessarily presumed mandatory duties for purposes of their proximate cause analyses. (Whitcombe, supra, 73 Cal.App.3d at pp. 707-708; Fleming, supra, 34 Cal.App.4th at p. 1384.) In any event, we decide the proximate cause issue against plaintiff not because the Whitcombe line of cases is controlling, but because the facts pleaded in this complaint are legally insufficient to connect the breach of mandatory duty with the injury.[16]
III. CONCLUSION
We affirm the Court of Appeal’s conclusions. The SVPA imposed a mandatory duty upon defendants to designate two evaluators to assess all persons referred by the DOC. However, plaintiff could not establish that the alleged breach of this duty was a proximate cause of Gomez’s death. As the Court of Appeal concluded, plaintiff is free to pursue a writ of mandate requiring defendants to comply with their mandatory duties under the SVPA.
Cantil-Sakauye, C. J., Chin, J., and Cuéllar, J., concurred.

 Unspecified statutory references are to the Welfare and Institutions Code.

 “Sexually violent offense” is defined in section 6600, subdivision (b).

 Citations to former SVPA sections are to the law as it existed in 2007, as amended by Proposition 83, approved by the voters on November 7, 2006. (1 Stats. 2006, p. A-320 et seq., 73D West’s Ann. Welf. & Inst. Code; see McKee, supra, 47 Cal.4th at p. 1186.) Although the SVPA has subsequently been further amended, none of the changes are material for purposes of our analysis.

 DMH is now petitioner and defendant State Department of State Hospitals, and Department of Corrections (DOC) is now the Department of Corrections and Rehabilitation. Here we use the state entities’ former names as set out in the applicable 2007 version of the SVPA.

 Each county’s board of supervisors is required to designate either the district attorney or the county counsel to pursue SVPA civil commitment actions. (§ 6601, subd. (i).)

 On our own motion, we take judicial notice of the fact that Pitre was convicted in 2010 for the rape and murder of Gomez. (Evid. Code, § 452.) He received consecutive terms of 75 years to life and 25 years to life, plus 10 years for two prior conviction enhancements.

 Defendants invoked Government Code section 845.8, subdivision (a), which provides that a public entity or employee is not liable for “[a]ny injury resulting from determining whether to parole or release a prisoner . . . .”

 Plaintiff contends that permitting DMH to merely review available records would duplicate the DOC screening mandated by section 6601, subdivision (b). Not so. Unlike the DOC screening, DMH’s evaluation must be conducted by practicing psychologists and/or psychiatrists and must consider the factors identified in section 6601, subdivision (c).

 The complaint relies on an uncodified statute enacted in 2008, in which the Legislature stated, “The [SVP] civil commitment program requires clinical evaluations of potential [SVPs] for possible commitment . . . .” (Stats. 2008, ch. 601, § 1, subd. (b), pp. 4293, 4294, italics added.) Even assuming that a mandatory duty could arise from an uncodified legislative declaration, and even if the 2008 legislation were relevant to our construction of the 2007 version of the SVPA, the reference to “clinical evaluations” is ambiguous. It is not clear whether the phrase refers to in-person assessments, or merely evaluations by practicing clinicians.

 An uncodified statement accompanying the SVPA’s enactment in 1996 declared: “The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once *352 identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society.
“The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society. “The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes.” (Stats. 1995, ch. 763, § 1, p. 5921; see Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1144, fn. 5 [81 Cal.Rptr.2d 492, 969 P.2d 584].)
The 2006 SVPA amendments reflect enhanced concern with protection of the public from sexually violent predators. (See McKee, supra, 47 Cal.4th at p. 1186.)

 Proximate cause is also a necessary element of plaintiff’s negligence claims. (6 Witkin, Summary of Cal. Law, supra, Torts, § 1181 et seq., p. 548 et seq.; Evid. Code, § 669, subd. (a)(2) [negligence per se].)

 In cases where concurrent independent causes contribute to an injury, we apply the “substantial factor” test of the Restatement Second of Torts, section 423, which subsumes traditional “but for” causation. This case does not involve concurrent independent causes, so *353 the “but for” test governs questions of factual causation. (Viner v. Sweet (2003) 30 Cal.4th 1232, 1239-1241 [135 Cal.Rptr.2d 629, 70 P.3d 1046].)

 As noted above, Government Code section 845.8, subdivision (a), immunizes public employees from liability for “[a]ny injury resulting from determining whether to parole or release a prisoner . . . .”

 The degree of discretion conferred by the governing statutes may be a relevant factor. We note that the discretion possessed by the courts in Whitcombe, supra, 73 Cal.App.3d 698, and Fleming, supra, 34 Cal.App.4th 1378, as to whether to release a probationer was considerably broader than the discretion exercised by an SVP evaluator. The Real Estate Commissioner in Perry also exercised a greater degree of discretion over the handling of a fraud complaint than do the various actors under the SVPA evaluation scheme. The determination whether an inmate meets the SVP criteria is guided by statutory factors and constrained by statutory procedures. Nevertheless, the SVPA review scheme clearly contemplates the possibility that evaluators may disagree, and here the only DMH evaluator to review Pitre’s case found that he was not an SVP. Thus, the discretion in question was not so constrained as to provide support for plaintiff’s claim that any reasonable evaluator would have found Pitre to be an SVP.

 Because of our conclusion on the proximate cause issue, we do not reach the question whether the immunity conferred by Government Code section 845.8, subdivision (a) would extend to DMH’s failure to employ two evaluators.

 Plaintiff’s reliance on cases such as Landeros v. Flood (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389], Henderson v. Newport-Mesa Unified School Dist. (2013) 214 Cal.App.4th 478 [154 Cal.Rptr.3d 222], Alejo v. City of Alhambra (1999) 75 Cal.App.4th 1180 [89 Cal.Rptr.2d 768], and Braman v. State of California (1994) 28 Cal.App.4th 344 [33 Cal.Rptr.2d 608], is unavailing. Plaintiff cites no case, and we have found none, in which a showing of proximate cause was founded on a series of discretionary determinations comparable to the scenario set out in her complaint.