Filed 5/1/26  Kunau v. Superior Court CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| | |
|---|---|
| CODY KUNAU,<br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF SHASTA COUNTY,<br>        Respondent;<br><br>CITY OF REDDING et al.,<br>        Real Parties in Interest. | C104107<br><br>(Super. Ct. No. 24CV0205953) |

Petitioner Cody Kunau was injured by falling tree branches while walking on a public sidewalk in the City of Redding (the City).  Kunau sued the City and Sysco Corporation (Sysco), real parties in interest, for personal injuries.  The City moved to strike some of the allegations of Kunau's complaint, including references to Government Code section 815.6.[1]  Respondent trial court granted the motion, finding the operative complaint failed to identify an enactment imposing a mandatory duty on the City.

---

[1] Undesignated statutory references are to the Government Code.

1

Kunau seeks writ review of the trial court's order. He argues the City's ordinances establish a mandatory duty to care for municipal trees. We disagree. Accordingly, we will deny the petition.

## I. BACKGROUND

Kunau was injured when "he was struck on the head, neck, back and shoulders by large tree branches and limbs" that fell from trees planted near the intersection of Tehama and Market Streets in the City. According to the operative first amended complaint, the branches and limbs had grown to the point that they extended over the street and interfered with vehicles coming and going from Tehama and Market Streets. The first amended complaint alleges a Sysco delivery truck "struck the low hanging branches and limbs located alongside . . . Tehama and Market Streets which caused them to be dislodged from the trees and strike" Kunau.

The first amended complaint asserts two causes of action against the City: negligence and dangerous condition of public property. The negligence cause of action refers to several provisions of the Government Code, including section 815.6.[2] The negligence cause of action also refers to Redding Municipal Code sections 13.40.040 and 13.40.050.

The City filed a motion to strike the references to section 815.6, arguing the first amended complaint failed to identify an enactment imposing a mandatory duty on the City, as required by section 815.6. Kunau opposed the motion, arguing Redding Municipal Code sections 13.40.040 and 13.40.50 impose on the City a mandatory duty to maintain trees in public areas.

The trial court issued a tentative ruling granting the City's motion. As relevant here, the trial court tentatively concluded the only part of Redding Municipal Code

---

[2] The negligence cause of action also refers to sections 815.2, 815.4, 820, and 835. Those theories are not at issue here.

sections 13.40.040 and 13.40.50 that could possibly establish a mandatory duty was section 13.40.040, subdivision (a), which directs the park foreman to plant, inspect, maintain, and remove trees. However, the trial court continued, the mandatory duty to maintain trees itself involves the exercise of discretion. Therefore, the trial court concluded, Redding Municipal Code section 13.40.040, subdivision (a) does not establish the type of mandatory duty required by section 815.6. What's more, the trial court said, section 815.6 requires proximate cause (that is, cause " 'unbroken by any efficient intervening cause,' " quoting *Whitcombe v. County of Yolo* (1977) 73 Cal.App.3d 698, 702-703) and "a vehicle hitting a tree could be considered an efficient intervening cause." Following argument, the trial court affirmed the tentative ruling and granted the motion to strike.

Kunau petitioned for a writ of prohibition or mandate directing the trial court to vacate the order granting the City's motion to strike. We summarily denied the petition. Kunau then petitioned for review in the California Supreme Court. By order dated October 15, 2025, our Supreme Court granted the petition and transferred the matter back to us, with directions to issue an order to show cause to respondent court why relief should not issue. The City filed a return, and Kunau filed a reply.

## II. DISCUSSION

*A.     Standard of Review*

"A trial court may '[s]trike out any irrelevant, false, or improper matter inserted in any pleading' and 'all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court.' (Code Civ. Proc., § 436, subds. (a), (b).) Generally, we review a ruling on a motion to strike for abuse of discretion. (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309.) But where, as here, the ruling concerns 'the proper interpretation of a statute, and its application to undisputed facts,' it is a question of law which we review de novo." (*Ng. v. Superior Court* (2025) 108 Cal.App.5th 382, 386.)

*B.      Applicable Legal Principles*

"Public entities in California are not liable for tortious injury unless liability is imposed by statute." (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 427 (*San Mateo*); see § 815, subd. (a) ["A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person"].)  "However, this broad grant of immunity is subject to the exception contained in . . . section 815.6 for certain ministerial acts not subject to the exercise of discretion." (*Danielson v. County of Humboldt* (2024) 103 Cal.App.5th 1, 13.)

Section 815.6 provides:  "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  (See § 810.6 [" 'Enactment' means a constitutional provision, statute, charter provision, ordinance or regulation"].)  "Thus, the government may be liable when (1) a mandatory duty is imposed by an enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 348 (*State Hospitals*).)  We are concerned with the first of these requirements.

Our Supreme Court has explained that "application of section 815.6 requires that the enactment at issue be *obligatory,* rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498.)  " 'It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function *if the function itself involves the exercise of discretion.* ' " (*State Hospitals, supra*, 61 Cal.4th at p. 348.)  Courts have construed the

4

mandatory duty requirement "rather strictly, finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.' " (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898.)

Whether a particular enactment "is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 631.) "We must, therefore, examine the language, function and apparent purpose" of each cited enactment "to determine if any or each creates a mandatory duty designed to protect against the kind of injury plaintiff allegedly suffered here." (*Haggis v. City of Los Angeles, supra*, 22 Cal.4th at p. 500.)

C.      *Analysis*

Kunau argues Redding Municipal Code sections 13.40.040 and 13.40.050 together establish a mandatory duty to maintain trees planted alongside public roadways to prevent injury to pedestrians. We conclude the specified enactments establish an obligation to perform a discretionary function, which does not support liability under section 815.6.

Redding Municipal Code section 13.40.040 entitled "Maintenance and removal on public areas," provides: "A. The parks foreman is authorized and directed to plant, inspect and maintain trees in planting strips and public areas, and remove such trees when they institute a hazard or impediment to public travel. [¶] B. Before removing any such tree, the parks foreman shall give the adjoining property owner at least ten days' advance written notice thereof and of the property owner's right to file an objection to the removal with the commission, whose decision thereon shall be final. [¶] C. Before removing any such tree, the parks foreman shall obtain the concurrence of the director of community services or his designee. [¶] D. No such notice or concurrence shall be required in the case of manifest public hazard and immediate necessity."

5

Redding Municipal Code section 13.40.050, entitled "Property owner – Maintenance," provides: "A. Notwithstanding Section 13.40.040, the parks foreman may permit a property owner to maintain trees in the parking strip adjoining his property, provided that the type of tree planted therein is one of the trees listed in the comprehensive tree plan. [¶] B. All trimming and other maintenance work upon such trees shall be done by a licensed tree trimmer as provided in section 13.40.070A or by the owner under the general supervision of the parks foreman and in accordance with the rules established by the comprehensive tree plan."

Kunau purports to find support for a mandatory duty in Redding Municipal Code sections 13.40.040 and 13.40.050, considered together. However, he primarily relies on Redding Municipal Code section 13.40.040, subdivision (A). As the trial court observed, subdivision (A) comes closest to establishing the existence of a duty (though not, as the court concluded, close enough). Accordingly, we begin with subdivision (A).

Kunau emphasizes Redding Municipal Code section 13.40.040, subdivision (A)'s use of the word "directed." He notes that "direct" means, *inter alia*, "[t]o cause (something or someone) to move on a particular course," "[t]o guide (something or someone); to govern," and "[t]o instruct (someone) with authority." (Black's Law Dict. (12th ed. 2024).) He suggests the compulsory nature of the word supports the notion that subdivision (A) requires the parks foreman to maintain trees and thus establishes a mandatory duty.

We readily accept that Redding Municipal Code section 13.40.040, subdivision (A) imposes an obligation on the City, through the parks foreman, to maintain trees. However, we are not convinced the enactment imposes a mandatory duty, rather than an obligation to perform a discretionary function.

"While the dividing line between a discretionary and mandatory duty is not always definitive, the California Supreme Court has articulated 'rigid requirements for imposition of governmental liability under . . . section 815.6.' " (*San Mateo, supra*, 213

6

Cal.App.4th at p. 429.) "Even where an enactment imposes an obligation, it does not necessarily follow that the obligation gives rise to a mandatory duty. The key question is whether the obligation involves an exercise of discretion. As the Supreme Court explained, '[i]t is not enough . . . that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion.' " (*County of Los Angeles v. Superior Court* (2012) 209 Cal.App.4th 543, 549 (*County of Los Angeles*).)

"Therefore, specific terms used in the enactment are not dispositive. For example, in some contexts, use of the word 'shall' will impose a mandatory duty [citation], while in others it will not [citation]. As the Court of Appeal explained in *de Villers*[ *v. County of San Diego* (2007)] 156 Cal.App.4th[ 238,] 260): 'In determining whether a mandatory duty actionable under section 815.6 had been imposed, the Legislature's use of mandatory language (while necessary) is not the dispositive criteria. Instead, the courts have focused on the particular action required by the statute, and have found the enactment created a mandatory duty under section 815.6 only where the statutorily commanded act did not lend itself to a normative or qualitative debate over whether it was adequately fulfilled.' " (*County of Los Angeles, supra*, 209 Cal.App.4th at pp. 549-550, italics omitted.) But if an enactment "leaves implementation to an exercise of discretion, 'lend[ing] itself to a normative or qualitative debate over whether [the duty] was adequately fulfilled,' an alleged failure in implementation will not give rise to liability." (*State Hospitals, supra*, 61 Cal.4th at p. 350.) A mandatory duty must thus be based on a precisely formulated duty that is phrased in "explicit" and "forceful" language and leaves no room for the public entity's discretion or judgment. (*Id.* at p. 351; see also *Guzman v. County of Monterey, supra*, 46 Cal.4th at pp. 910-911.)

Does Redding Municipal Code section 13.40.040, subdivision (A)'s instruction to "maintain trees" amount to an explicit and forceful directive to the City or parks foreman

that leaves no room for the exercise of discretion or judgment? We think the answer is clearly, "no."

Redding Municipal Code section 13.40.040, subdivision (A) does not direct the parks foreman to maintain trees in any particular way. It does not establish specific criteria for trimming low hanging branches or ensuring any minimum clearance between such branches and the street or sidewalk. Subdivision (A) does not even require that potentially hazardous branches be removed. Thus, subdivision (A) does not by its terms impose any mandatory or ministerial duty on the City or parks foreman. If anything, subdivision (A)'s use of the word "maintain" suggests an obligation involving the exercise of discretion.

Redding Municipal Code section 13.40.010, subdivision (C) defines "maintain" to include "trimming, pruning, cutting, spraying, fertilizing, propping, treating for disease or injury and any other similar acts which promote the life, growth, health or beauty of trees, except watering, unless specifically so stated." The definition does not specifically require that the parks foreman remove low hanging branches or ensure any minimum clearance from such branches to the street or sidewalk. The definition instead leaves the decision how best to maintain trees to the parks foreman. It is up to the parks foreman, then, to decide whether low hanging branches should be pruned or trimmed (and if so, by how much), or whether they should instead be propped or treated for disease or injury. These are judgment calls that entail an evaluation and balancing of numerous considerations, such as the needs of the particular tree, the time of year, weather and hydrologic conditions, and the allocation of resources to other trees within the City. (See, e.g., *Bossi v. State of California* (1981) 119 Cal.App.3d 313, 320 ["By definition, highway maintenance involves considerable discretion. The department is not required by law to simultaneously repair every portion of highway under its jurisdiction. It must allocate its limited resources according to various priorities"].)

8

That Redding Municipal Code section 13.40.040, subdivision (A) contemplates that the parks foreman will exercise discretion in performing his duties can also be seen in the direction that he "remove such trees when they institute a hazard or impediment to public travel." Here, again, the decision whether a tree should be removed, rather than rehabilitated or restored to health, must equally involve considered judgment and the application of expertise. At a minimum, the parks foreman would have to decide whether the hazard was such that written notice of removal should be given to the adjoining property order and the concurrence of the director of community services obtained (as required by Redding Municipal Code section 13.40.040, subdivisions (B) and (C)), or whether those procedures should be bypassed due to "manifest public hazard and immediate necessity" (as permitted by subdivision (D)). Thus, the enactment as a whole "leaves implementation to an exercise of discretion, 'lend[ing] itself to a normative or qualitative debate over whether [the duty] was adequately fulfilled.' " (*State Hospitals, supra*, 61 Cal.4th at p. 350.)

*County of Los Angeles* provides a helpful analogy. There, the plaintiffs sued the County of Los Angeles (county) and others after they were attacked by two pit bulls that were running loose. (*County of Los Angeles, supra*, 209 Cal.App.4th at p. 547.) The plaintiffs' complaint alleged that county's animal control department failed to comply with an ordinance that said: " 'No animal shall be allowed to constitute or cause a hazard, or be a menace to the health, peace or safety of the community.' " (*Ibid.*) The ordinance instructed that the department " '*shall* capture and take into custody . . . [a]ny animal being kept or maintained contrary to the provisions of this Division.' " (*Ibid.*) The trial court concluded the above-cited enactments gave rise to a mandatory duty to take custody of the pit bulls before the attack. (*Id.* at p. 548.) The Court of Appeal disagreed, stating "what constitutes a 'hazard' or 'menace to the health, peace or safety of the community' is an inherently subjective question which requires the exercise of considerable discretion based on consideration of a host of competing factors.

9

[Citations.] It involves 'debatable issues over whether the steps taken by the entity *adequately* fulfilled its obligation.' " (*Id.* at p. 550.) So too here.

Redding Municipal Code section 13.40.050 does not change our conclusion. Kunau points to subdivision (B), which provides, again, that maintenance work on municipal trees "shall be done by a licensed tree trimmer" or an adjoining property owner "under the general supervision of the parks foreman and in accordance with the rules established by the comprehensive tree plan."[3] Kunau suggests subdivision (B)'s reference to "the general supervision of the parks foreman" establishes the imposition of a mandatory duty, when viewed in combination with Redding Municipal Code section 13.40.040. We disagree. That the parks foreman may supervise property owners from time to time does not demonstrate that the drafters of the ordinance intended to make tree maintenance a ministerial function. Nothing in subdivision (B) supports that view, whether alone or in combination with Redding Municipal Code section 13.40.040.

Based upon our independent review, we conclude neither Redding Municipal Code section 13.40.040 nor Redding Municipal Code section 13.40.050 constitute an enactment imposing a mandatory duty on the City to care for trees, whether considered separately or together. Accordingly, the trial court properly struck the allegations referring to section 815.6 from the first amended complaint, and the petition must therefore be denied.

---

[3] Kunau does not argue before us that support for the existence of a mandatory duty can be found in "the rules established by the comprehensive tree plan."

## III.  DISPOSITION

The writ petition is denied.  In the interests of justice, the parties shall bear their own costs in this writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)

                                                   /S/
                                               RENNER, J.

We concur:

/S/
DUARTE, Acting P. J.

/S/
MESIWALA, J.